**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **THOMAS A. DODSON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action Number |
| **v.** | ) | **2:12-cv-01944-AKK** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **ACTING COMMISSIONER OF** | ) | |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff Thomas A. Dodson brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the adverse decision of the Administrative Law Judge ("ALJ"), which has become the final decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the ALJ's decision is supported by substantial evidence and he applied the correct legal standards. Thus, the court will **AFFIRM** the decision denying benefits.

**I. Procedural History**

Dodson protectively filed his application for Title II disability insurance benefits[1] on February 1, 2010, alleging a disability onset date of August 20, 2009, (R. 113), due to the effects of sleep disorder, back problems, and illiteracy. (R. 128). After the SSA denied his application on March 9, 2010, (R. 99-103), Dodson requested a hearing, (R. 107-108). At the time of the hearing on May 18, 2011, Dodson was fifty-two years old and had a seventh grade education.

---

[1] Although Dodson's application states it is for supplemental security income, (R. 113), the ALJ, *see* (R. 19, 69), and the parties, *see* Doc. 9 at 1 and Doc. 8 at 2, indicate that it is an application for disability insurance benefits.

(R. 73).  Dodson had past relevant medium, semi-skilled, non-transferable work as a painter.  (R. 91).  Dodson has not engaged in substantial gainful activity since August 20, 2009, the alleged onset date.  (R. 22).

The ALJ denied Dodson's claim on July 19, 2011, (R. 19-30), which became the final decision of the Commissioner when the Appeals Council refused to grant review on March 22, 2012, (R. 1-6).  Dodson then filed this action pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3).  Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen,* 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence."  *See id.* (citing *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin,* 849 F.2d at 1529 (quoting *Bloodsworth,* 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the

Commissioner's findings. *See Martin,* 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb,* 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1)     whether the claimant is currently unemployed;

(2)     whether the claimant has a severe impairment;

(3)     whether the impairment meets or equals one listed by the Secretary;

(4)     whether the claimant is unable to perform his or her past work; and

(5)     whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a

claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater,* 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, he must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart,* 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[2]

*Id.* However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. *See* 20 CFR §§ 404.1529 and 416.929; *Hale [v. Bowen,* 831 F.2d 1007, 1011 (11th Cir.1987) ].

*Elam v. R.R. Ret. Bd.,* 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted). Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt,* 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

---

[2] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale,* 831 F.2d at 1012.   Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability.  *Id.*

## IV. The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined that Dodson had not engaged in substantial gainful activity since the alleged onset of his disability, and therefore met Step One.   (R. 22).   Next, the ALJ acknowledged that Dodson's severe impairments of lumbar degenerative disc disease with bilateral leg pain and a history of thalamic bleeding related to hypertension met Step Two.   *Id.*   The ALJ also noted that Dodson had the non-severe impairment of sleep apnea and anxiety.  (R. 22-23).  The ALJ then proceeded to the next step and found that Dodson did not satisfy Step Three since he "does not have an impairment or combination of impairments that meets or [medically] equals one of the listed impairments." (R. 24).   Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel,* 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that Dodson "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except [Dodson] can occasionally bend and stoop. [He] should not drive or work around unprotected heights.  [He] is restricted to simple, repetitive, non-complex tasks."  (R. 24). Based on this assessment of Dodson's residual functional capacity ("RFC"), the ALJ determined Dodson was unable to perform his past relevant work.  (R. 28).  Lastly, in Step Five, the ALJ considered Dodson's age, education, work experience, and RFC, and determined, based on the

Medical Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2, and on the testimony of a vocational expert ("VE"), that Dodson "is capable of making a successful adjustment to other work which exists in significant numbers in the national economy." (R. 30). Because the ALJ answered Step Five in the negative, he determined that Dodson was not disabled. *Id.*

### V. Analysis

The court now turns to Dodson's contentions that the ALJ erred by failing to (1) account for a sit/stand option in the RFC determination; (2) properly consider his education and mental limitations; (3) rely on a medical source opinion ("MSO"); and (4) fully and fairly develop the record. The court addresses each contention in turn.

### *A. Sit/Stand Option*

First, Dodson argues that the ALJ failed to include a sit/stand option in his "ultimate RFC" finding. Doc. 8 at 6. As a threshold matter, the court notes that the ALJ, in fact, addressed this issue: "[b]ecause [Dodson] frequently needs to change position to relieve his back pain, *the claimant requires a sit/stand option*." (R. 28) (emphasis added). Moreover, the ALJ also asked the VE to consider an individual who "should be permitted to sit or stand," (R. 92), and then relied on the VE's testimony to determine that Dodson could perform jobs available in the national economy, (R. 30). Although Dodson acknowledges that the ALJ stated in his opinion that Dodson required a sit/stand option and included it in his hypothetical to the VE, Dodson states nonetheless that "[t]he omission of this integral part of the RFC relied on, the sit/stand option …, facilitates an appearance that [Dodson] has a higher RFC than actually assigned and in the realm of light work rather than sedentary." Doc. 8 at 7. Dodson's contention is unavailing. As is evident from the record, the ALJ included the sit/stand option in his

hypothetical to the VE.  Significantly, the VE testified that a person limited to light work *and a sit/stand option* could work as a vending machine attendant and packager of small parts.  (R. 92-93).  Consequentially, because at Step Five, a VE's testimony in response to "a hypothetical question which comprises all of the claimant's impairments" is substantial evidence, *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002), the ALJ's omission of the sit/stand option from his "ultimate RFC" finding is not reversible error.

The court disagrees also with Dodson's related contention that the sit/stand option did not sufficiently "specify the amount of time [he] would be expected to spend in each position."  Doc 8 at 7.  In similar circumstances, the Eleventh Circuit found that the ALJ's reference to "what's typically called a sit/stand option" created "the reasonable implication of the ALJ's description was that the sit/stand option would be at [the claimant's] own volition."  *Williams v. Barnhart*, 140 Fed. App'x 932, 937 (11th Cir. 2005).  Here, the ALJ's reference to an individual who "should be permitted to sit or stand," (R. 92), not only dictates a similar finding regarding the "the reasonable implication," but also Dodson "failed to offer any evidence that he could not perform the [] jobs identified by the [VE] based on his ability to sit or stand for any period of time."  *Id.*  As such, based on this record, the court finds no reversible error.

### B. Education and Mental Limitations

Dodson contends next that, due to his seventh grade education and "allege[d] illiteracy," he cannot work as a vending machine attendant because it requires "making change" and "keeping records of receipts."  Doc. 8 at 7-8.  This contention is belied by Dodson's testimony that he could "probably" read a "simple grocery list," read "some" of a newspaper, perform "simple math; addition, subtraction, and those sorts of things," and "make change okay if [he went] to a store."  (R. 74).  Moreover, based on Dodson's testimony, the ALJ limited Dodson to

"simple, repetitive, non-complex tasks." (R. 24). Based on this limitation, which is supported by substantial evidence, the VE opined that such an individual could work as a vending machine attendant. (R. 92). Reversal is not warranted here because the ALJ properly relied on the VE's testimony, *see Jones v. Apfel*, 190 F.3d 1224, 1230 (11th Cir. 1999) ("[A]n ALJ may rely solely on the VE's testimony."), and because Dodson has not argued that he cannot perform the other light work level jobs[3] or sedentary work level jobs[4] listed by the VE, *see Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). Put simply, even if Dodson is correct that the ALJ erred as it relates to the vending machine position – and the evidence does not support such a finding – there is no basis to reverse on this issue because Dodson never addressed the other jobs identified by the VE.

### C. MSO

For his third contention of error, Dodson argues that the ALJ's RFC determination was not supported by substantial evidence because the ALJ did not rely on a MSO "or RFC of record in a format compliant with SSR 96-8p." Doc. 8 at 8. This contention is also unavailing because the RFC assessment is not a medical assessment, and the ALJ is not required to rely on a MSO or an RFC from a physician. *Langley v. Astrue*, 777 F. Supp. 2d 1250, 1261 (N.D. Ala. 2011); *Green v. Soc. Sec. Admin.*, 223 Fed. App'x 915, 923-24 (11th Cir. 2007); *but see Coleman v. Barnhart*, 264 F. Supp. 2d 1007, 1010 (S.D. Ala. 2003) ("[T]he Commissioner's fifth-step burden cannot be met by a lack of evidence, ... but instead must be supported by the residual functional capacity assessment of a treating or examining physician.").

---

[3] The VE testified that such an individual could also work as a packager of small parts and price tagger. (R. 92).
[4] The VE testified that such an individual could perform sedentary work as as an inspector of small parts, bonder of semi-conductors, and polisher in the optical goods industry. (R. 93).

*D. Development of the Record*

Finally, relying on 20 C.F.R. § 404.1519a(b)(4), which requires a consultative examination when "[t]here is an indication of a change in [the claimant's] condition that is likely to affect [his] ability to work, but the current severity of [his] impairment is not established," Dodson contends that the ALJ erred in failing to order a consultative examination to "obtain an accounting of [his] limitations."   Doc. 8 at 8.   Although Dodson is correct that the ALJ "has a basic duty to develop a full and fair record," Dodson overlooks that "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim."  *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003); *see* 20 C.F.R. § 416.912(a).   Critically, the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision."  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007).

Here, the court sees no evidence – and Dodson points to none – "of a change in [his] condition that is likely to affect [his] ability to work."  20 C.F.R. § 404.1519a(b)(4).   Further, the record contains sufficient information for the ALJ to make a decision.   Specifically, Dodson's medical records date back to May 2003, when he saw primary care physician Dr. Carol M. Johnson for his back pain.   (R. 254).   In December 2009, Dr. Johnson referred Dodson to an orthopaedic specialist, Dr. Lloyd Johnson, for physical therapy and an MRI, which revealed small disc herniation at T11-12, no evidence of spinal cord impingement, a small disc protrusion at L5-S1, and moderate right lateral disc herniation at L3-4.   (R. 266-267).   Dr. Lloyd Johnson suggested epidural injections, (R. 269), but did not recommend surgical intervention, (R. 325). Dodson also saw Dr. Sean O'Malley at the Brain and Spine Center in February 2010, (R. 306-

309); however, Dr. O'Malley "said that he couldn't help him."   (R. 324).   As the ALJ summarized,

> [Dodson's] course of treatment does not support a finding that [he] is disabled. [He] has primarily seen his primary care doctor for treatment of his back pain. Although [he] has received treatment for the allegedly disabling impairments, the treatment has been essentially routine and/or conservative in nature.   Though [he] was referred to an orthopedist for epidural injections, the medical records show that [Dodson] only had on injection, which he reported was successful.   That [he] did not follow up with his treatment indicates [his] symptoms may not have been as serious as had been alleged in connection with the application and appeal.

(R. 28).   The ALJ's findings are consistent with the record.   More importantly, when, as here, the record contained sufficient evidence "to make an informed decision," *Ingram*, 496 F.3d at 1269, the ALJ was not required to order a consultative examination.

## VI. Conclusion

Based on the foregoing, this court concludes that the ALJ's determination that Dodson is not disabled is supported by substantial evidence and that the ALJ applied proper legal standards in reaching this decision.   Therefore, the Commissioner's final decision is **AFFIRMED**.   The court will enter a separate order to that effect simultaneously.

**DONE** the 2nd day of June 2014.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE